**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ANTONIO GREGORY BROOKS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DEPARTMENT OF THE ARMY,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 24-cv-2259 (APM)** |

**MEMORANDUM OPINION**

This matter is before the court on a Motion for Summary Judgment, ECF No. 34 [hereinafter Def.'s Mot.], filed by Defendant Department of the Army ("the Army"). For the reasons stated below, the Army's Motion for Summary Judgment is granted.

## I. BACKGROUND

### A. FOIA Request to the Army

Pro se Plaintiff Antonio Gregory Brooks ("Brooks") worked as a contractor "for and in connection with various elements and entities between 2016 and 2024, including components of the Department of the Army." Pl.'s Opp'n, ECF No. 36, Ex. A [hereinafter Pl.'s Decl.] ¶ 3. "[He] performed work under Army authority and supervision on several occasions during this period." *Id.*

On or about May 17, 2023, Brooks sent a Freedom of Information Act (FOIA) request to the Army, seeking "a copy of any records whether electronic or paper about [him] maintained [by the Army]," and requested they perform "a broad and cumulative search." *See* Compl., ECF No. 1 [hereinafter Compl.], ¶ 7; Decl. of Marques McIntosh, ECF No. 34-3 [hereinafter

McIntosh Decl.], ¶¶ 1–2; McIntosh Decl., Ex. A [hereinafter FOIA Request]. The FOIA Request also included an addendum listing 29 sprawling categories that his Request might "include but [was] not limited to":

> Personnel records; Emails while under employment (as a contractor during the periods of 2016-2022); Work related products while under employment (as a contractor during the periods of 2016-2022); Investigative notes and referrals Clearance processing actions; Interagency and external agency referrals or actions; Adverse actions or measures considered (either through referral or under assessments, insider threat reporting, or full investigations); Techniques, measures, devices, and other related means used during surveillance, targeting, and analysis (i.e. usage of novel devices such as cyber operations, usage of aromatic devices, usage of active denial systems, usage of electronic stimuli device or air related device, usage of sting-ray device, usage of industrial control system devices, etc.) and any additional known procurement or usage of devices by the US Army Cl/CID, FBI or related component (Operation Technologies Division/Enterprise Services Division/Emerging Technologies Section or any known component at FBI HQ or whether located at a field office); Usage of vehicle operations measures (transportation surveillance) Usage of confidential informants and human confidential sources; Interviews with known associates and potential associates not related to clearance processing; Any information developed, reported, shared and/or actioned in conjunction with any Army component, to include 1st Information Operations Command; Any information developed, reported, shared and/or actioned in conjunction with any other FBI Division, to include Enterprise Service Division, Criminal Justice Information Services, Operation Technologies Division; Any information reported, shared and/or actioned in conjunction with Defense Counterintelligence and Security Agency or related component; Any information developed, reported, shared and/or actioned in conjunction with any AF OSI Office; Any information developed, reported, shared and/or actioned in conjunction with any Navy NCIS Office; Any information developed, reported, shared and/or actioned in conjunction with ODNI Any information developed, reported, shared and/or actioned in conjunction with any IG office; Any information developed, reported, shared and/or actioned in conjunction with any US Attorney Office; Any information developed, reported, shared and/or actioned in conjunction with any FBI Field Office; Any information developed, reported, shared and/or actioned in conjunction with any Army Cl/ClD Office; Referrals from IG or other agency FBI tips notifications and reporting; Information related to external agency actions or referrals or task force developments concerning the above named; Information developed and maintained through other repositories not explicitly stated or mentioned above concerning the above named; Information cross-referenced with other agencies that may be held in their data enclaves and actions taken to review

> or not review that data and analyze such information Decisions and actions taken on previous submitted FOIA and Privacy Act requests and personnel involved (i.e. DCSA, US Army, DOD, US Attorney, DoJ, DNI, etc.); Personnel, investigators, and support staff associated known to be coworkers, associates, supervisors (government employees and contract staff); Personnel, investigators, and support staff known to be tasked and assigned to any known assessments, insider threat reporting, or full investigations concerning the above named.

*See* FOIA Request.

The Army's Office of Chief Information Officer ("OCIO"), *see* McIntosh Decl. ¶ 1, responded on June 20, 2023, explaining that Brooks was required to narrow his FOIA Request to a more "limited purview," Compl. ¶ 8, but Brooks declined to do so, *see id.* ¶ 9. In May 2024, Brooks requested an update and did not receive one. *See id.* ¶ 10.

Brooks then filed this lawsuit on July 29, 2024, *see* Compl., and on January 28, 2025, the OCIO sent a renewed acknowledgement letter to Brooks in response to the same FOIA Request, *see* McIntosh Decl. ¶¶ 4–5; McIntosh Decl., Exhibit B [hereinafter Ack. Ltr.]. That letter again notified Brooks that at least 17 categories of his FOIA Request were overbroad and did not reasonably describe the records sought, and it asked that he clarify them within seven days, providing a timeframe and better defining the types of documents requested. *See* McIntosh Decl. ¶ 5; Ack. Ltr. Insofar as the FOIA Request sought email correspondence, OCIO asked Brooks specifically to "provide the to and from email addresses to be searched, personnel name, and timeframe." Ack. Ltr. The letter also notified Brooks that the Army was referring certain portions of his Request to the Army Criminal Investigation Division ("CID"), to Army Intelligence and Security Command ("ISC"), and to the Army Inspector General ("Inspector General"), as they were the most likely components to possess responsive records. *See id.*; McIntosh Decl. ¶ 4. Finally, OCIO explained that some portions of his FOIA Request did not fall under the purview of

the Army and directed Brooks to contact the applicable outside agencies and contracting companies directly. McIntosh Decl. ¶ 5; Ack Letter.

Around the same time, the Army also referred Brooks's FOIA Request to Army Cyber Command ("Cyber Command") at Fort Gordon, Georgia, which holds historical records of the "1st Information Operations Command," the only specific Army "unit" referenced in his FOIA Request. Decl. of Syreeta Owens Chiles, ECF No. 37-1 [hereinafter Chiles Decl.], ¶¶ 3–4.

On January 29, 2025, OCIO received a letter from Brooks, expressing potential willingness to "narrow the scope and provide keywords or parameters," but providing purported clarifying information for only three of the 17 categories. *See* McIntosh Decl. ¶ 6; McIntosh Decl., Ex. C [hereinafter Pl.'s Jan. 29 Ltr.]. Brooks's "clarification" for those three categories was to stress that he sought "emails and communications involving Army personnel relevant to [his] role (2016-2022); work products related to [his] assignments and associated interagency operations[, and]; reports, referrals, and interagency communications between Army components and external agencies like the FBI, DCSA, NCIS, or AF OSI." *See* Pl.'s Jan. 29 Ltr. However, Brooks did not, as requested, (1) provide email addresses to be searched or personnel names; (2) explain what "work products" meant; (3) submit date ranges for two of those three categories; or (4) narrow or explain the broad phrasing of "referrals, and interagency communications between Army components and external agencies." *See id.*; McIntosh Decl. ¶ 6.

OCIO followed up with Brooks on February 4, 2025, notifying him that "after extensive research" it was referring portions of his FOIA Request to the Army Reserve Command ("Reserve Command") and the Defense Counterintelligence and Security Agency ("DCSA"), as they were the most likely to possess responsive records. *See* McIntosh Decl. ¶ 7; McIntosh Decl., Ex. D.

**B. The Army's Referrals**

*1. CID*

On May 22, 2023, CID received referral of the FOIA Request from the Department of the Navy, which itself had received an identical FOIA request previously. *See* Decl. of Michelle Kardelis, ECF No. 34-4 [hereinafter Kardelis Decl.], ¶ 9; Kardelis Decl., Ex. A. The following day, CID searched its system of records. *See* Kardelis Decl. ¶ 3. CID retrieved one responsive document and partially released that document to Brooks on May 31, 2023, redacting the names of third parties under FOIA Exemptions 6 and 7(C). *See id.* ¶ 4–5; Kardelis Decl., Ex. B [hereinafter CID Dec. Ltr.]. CID also informed Brooks of his right to appeal and the possibility of additional redress through the Office of Government Information Services ("OGIS"), but Brooks did not pursue these avenues. *See* Kardelis Decl. ¶ 8; CID Dec. Ltr.

On January 28, 2025, the Army submitted its own referral of Brooks's same FOIA Request to CID. *See* Kardelis Decl. ¶ 9. CID "attempted to request clarification from Mr. Brooks as to certain portions of the request that may have aided" their ability to search once again for responsive records. *See id.* CID requested that Brooks provide the email addresses that he used at the time he was a contractor—because he was not employed by CID, CID was not privy to his email addresses. *See id.* ¶¶ 10–11; Kardelis Decl., Exs. C–D [hereinafter CID Emails]. On April 4, 2025, Brooks replied, declining to provide his email addresses. *See* Kardelis Decl. ¶¶ 12–13; CID Emails. CID then responded that, without this information, it could not conduct a search, and it also requested specific clarification regarding other portions of the Request. *See* Kardelis Decl. ¶ 14; CID Emails. Brooks never responded. *See id.*

*2. ISC*

On January 10, 2025, ISC received the Army's referral of Brooks's FOIA Request. *See* Decl. of Michael T. Heaton, ECF No. 34-5 [hereinafter Heaton Decl.], ¶¶ 1, 3; Heaton Decl., Ex. D. ISC then conducted a search of several records systems, but found no responsive records, and it so notified Brooks by letter on January 26, 2025. *See* Heaton Decl. ¶¶ 7, 13–18. The letter also advised Brooks of his appeal rights and of additional assistance available through OGIS and the National Archives and Record Administration, and it pointed out several other Army components or outside agencies that might have records responsive to his FOIA Request. *See id*. ¶ 7; Heaton Decl., Ex. E.

On February 3, 2025, the Office of the Judge Advocate General, Litigation Division, notified ISC that Brooks had provided additional information relating to his FOIA Request and it requested that ISC conduct another search. *See* Heaton Decl. ¶ 8; Heaton Decl., Ex. F. ISC conducted another search of several records systems but again found no responsive records. *See* Heaton Decl. ¶¶ 10, 13–18; Heaton Decl., Ex. H. Brooks was again notified of his right to appeal and his options for administrative assistance. *See id*.

On March 18, 2025, ISC received a referral from DCSA regarding the same FOIA Request, and identifying a two-page document that DCSA determined fell under ISC's purview. *See* Heaton Decl. ¶¶ 11–12; Heaton Decl., Ex. I. Upon review, ISC partially released that record to Brooks, redacting third-party identifying information under FOIA Exemption 6. *See id.* ¶ 12; Heaton Decl., Ex. J. ISC also again advised Brooks of his right to appeal and of the options for administrative assistance, but Brooks did not pursue those avenues. *See* Heaton Decl. ¶¶ 12, 19.

*3. Cyber Command*

Cyber Command received referral of Brooks's FOIA Request on January 10, 2025. *See* Chiles Decl. ¶ 3. On May 14, 2025, Cyber Command emailed Brooks requesting clarification of his FOIA Request to better enable a search for responsive records. *See id.* ¶ 5; Chiles Decl., Ex. A [hereinafter CC Emails I]. More specifically, Cyber Command informed Brooks that, to search for the communications he requested, it would require the email addresses that he used during that time. *See id.* It also asked Brooks to more specifically describe his requests for (1) "work products" that were created during employment, and (2) "information developed" by the Army involving him. *See* Chiles Decl. ¶¶ 6–7; CC Emails I. Cyber Command also informed Brooks that "any clearance documents would be in the possession of his employer," but nonetheless, he should list any documents that he was seeking, just in case Cyber Command might possess them. *See* Chiles Decl. ¶ 8; CC Emails I. Brooks never responded to that email. *See* Chiles Decl. ¶ 9.

On May 27, 2025, Cyber Command sent a follow-up email, advising Brooks that it could not respond to his FOIA Request without the clarifying information it had requested, and it set forth more specific requests for clarification. *See id.* ¶ 10; Chiles Decl., Ex. B. Brooks did not respond to that email either. *See* Chiles Decl. ¶ 11.

*4. Inspector General*

In mid-January 2025, the Inspector General received referral of Brooks's FOIA Request. *See* Decl. of Ashley Ingram, ECF No. 37-2 [hereinafter Ingram Decl.], ¶ 5. On January 15, 2025, the Inspector General searched its records system and retrieved seven responsive documents consisting of 14 pages, which it released to Brooks on February 6, 2025, save for redactions made under FOIA Exemptions 5, 6, and 7(c). *See id.* ¶¶ 5–6; Ingram Decl., Ex. A; Def.'s Mot., Ex. 6,

ECF No. 34-8. Brooks was advised of his right to appeal and to seek administrative assistance from OGIS, though there is no indication that he pursued those avenues. *See id.*

*5. Reserve Command*

On February 5, 2025, Reserve Command received referral of Brooks's FOIA Request. *See* Decl. of Kimberly Pettaway, ECF No. 34-6 [hereinafter Pettaway Decl.], ¶¶ 1–2; Pettaway Decl., Ex. A. The following day, Reserve Command searched its own system of records and then consulted with the Reserve Command Office of the Staff Judge Advocate but found nothing responsive. *See* Pettaway Decl. ¶¶ 3–5. On February 13, 2025, Reserve Command issued a no records response to Brooks and explained his appeal rights. *See id.* ¶ 6; Pettaway Decl., Ex. B.

On September 11, 2025, Reserve Command emailed Brooks to inquire if he had ever been a contractor at Reserve Command, and if so, requested that he provide the timeframe and command where he was employed as a contractor and the email address that he used at that time. *See id.* ¶ 7; Pettaway Decl., Ex. C. Brooks never responded. *See* Pettaway Decl. ¶ 8.

*6. DCSA*

On February 11, 2025, the DCSA received referral of Brooks's FOIA Request. *See* Def.'s Mot., Ex. 5, ECF No. 34-7 [hereinafter DCSA Ltr.]. The DCSA is not an Army component—it is a sub-agency of the Department of Defense. *See* Def.'s Mot., Def.'s Mem. in Support of Def.'s Mot., ECF No. 34-1 [hereinafter Def.'s Mem.], at 4.

On June 18, 2025, the DCSA sent Brooks a letter notifying him that the FOIA Request was a duplicate of a request that it had previously received from him on July 18, 2024, and that it had already completed and closed that Request on March 18, 2025. *See* DCSA Ltr.

### C. The Instant Lawsuit

On July 29, 2024, Brooks filed this lawsuit, alleging that the Army was unlawfully withholding records responsive to his FOIA Request submitted on May 17, 2023, and demanding immediate release of such records. *See* Compl. at 4–5. On January 13, 2025, the Army filed an Answer, ECF No. 15, and shortly thereafter, the parties began filing rolling Status Reports, while the Army continued reprocessing Brooks's FOIA Request. *See* Def.'s Status Rep., ECF No. 17.

On November 24, 2025, the Army filed the instant Motion for Summary Judgment. *See* Def.'s Mot. The following day, the court issued an Order, ECF No. 35, directing Brooks to respond to the Motion for Summary Judgment by no later than December 24, 2025, and advising him of the consequences of failing to do so, *see id*. at 1–3. On January 14, 2026, Brooks filed his Opposition to the Motion for Summary Judgment, albeit 21 days late, and with no explanation for the delay. *See generally* Pl.'s Opp'n. On March 13, 2026, the Army filed its Reply in support of its Motion for Summary Judgment, ECF No. 37.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018); *see also* Fed. R. Civ. P. 56(a). However, the mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (per curiam).

The "vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Mil. Audit Proj. v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Summary judgment in a FOIA case "may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (quoting *Jud. Watch, Inc. v. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) ("An agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced or is wholly exempt from the Act's inspection requirements.") (cleaned up). An agency's declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Shapiro v. Dep't of Justice,* 40 F.4th 609, 613 (D.C. Cir. 2022).

Furthermore, "to satisfy FOIA's aims of providing more transparency into the workings of the government," an agency must generally demonstrate that it made an "adequate search" for records responsive to a FOIA request. *See Montgomery v. IRS*, 40 F.4th 702, 714 (D.C. Cir. 2022). This demonstration "entails a 'show[ing] that [the agency] made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Id.* (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

Finally, while the "pleadings of pro se parties must be liberally construed," a pro se plaintiff "is held to the same evidentiary burdens" on a motion for summary judgment "as those represented

by counsel," and must therefore "provide evidence that would permit a reasonable jury to find in his favor." *Rodriguez v. FTC*, No. 25-cv-2401 (LLA), 2026 WL 2349862, at *3 (D.D.C. Aug. 13, 2026) (internal quotation marks omitted).

## III. DISCUSSION

Brooks does not challenge any of the Army's withholdings, nor does he seek disclosure of any exempt material. *See generally* Pl.'s Opp'n. He contests only the sufficiency of the searches; more specifically, he finds it implausible that "no responsive records exist across multiple Army components[.]" *See* Pl.'s Decl. ¶¶ 6, 8; Pl.'s Opp'n at 1–3.

The Army raises two arguments supporting the sufficiency of its searches and responses. First, it argues that Brooks's FOIA Request did not reasonably describe the records that he was requesting. *See* Def.'s Mem. at 7–9. Second, it argues that, even though the FOIA Request was not reasonably described, the Army's components attempted to conduct searches calculated to uncover responsive documents, to the extent that they understood the FOIA Request. *See id.* at 9–16. For the reasons explained below, the court is persuaded by both arguments.

### A. The Records As-Sought

FOIA "requires agencies to make records available in response to any request 'made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed.'" *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 150 (D.C. Cir. 1986) (quoting 5 U.S.C. § 552(a)(3)(A)). In "the absence of any evidence that plaintiff submitted a proper FOIA request" in accordance with these rules, summary judgment is warranted. *See Thomas v. Fed. Commc'ns Comm'n*, 534 F. Supp. 2d 144, 146 (D.D.C. 2008).

As pertinent here, a FOIA request must "reasonably describe[]" the records being requested. *See* 5 U.S.C. § 552(a)(3)(A). A FOIA request reasonably describes the records sought

"if the agency is able to determine precisely what records are being requested." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020). The standard is that a "professional employee of the agency who [is] familiar with the subject area of the request" should be able to "locate the record with a reasonable amount of effort." *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990).

To that same end, the Army's FOIA regulations require a requester to "provide a description of the desired record that enables the Government to locate the record with a reasonable amount of effort." Def's Mem. at 8 (citing Dep't of the Army, Reg. 25-55, *Department of the Army Freedom of Information Act*, para 3-6a (Oct. 19, 2020) ("AR 25-55")); *see also* 32 CFR § 286.5(a) (FOIA requests to the Army "must reasonably describe the records sought and provide sufficient detail to enable personnel to locate those records with a reasonable amount of effort. To the extent possible, requesters should include specific information that may assist personnel in identifying the requested records, such as the date, title or name, author, recipient, subject matter of the record, case number, file designation, or reference number" and requesters "are encouraged to make every effort to reasonably describe the requested records in order to avoid any delays in the processing of their requests.").

FOIA requests lacking specificity do not reasonably describe records, as required, and are therefore insufficient to trigger any agency obligation. *See Gun Owners of Am., Inc. v. Fed. Bureau of Invest.*, 594 F. Supp. 3d 37, 42 (D.D.C. 2022). Nor must an agency "honor a request that requires an unreasonably burdensome search," including where the requester seeks "a vast quantity of material," *see Am. Fed'n of Gov't Emps., Loc. 2782 v. Dep't of Comm.*, 907 F.2d 203, 209 (D.C. Cir. 1990) (internal quotation marks omitted), "not tailored to the requester's purpose for requesting the material," *Bennett v. U.S. Postal Service*, No. 24-cv-3668 (LLA), 2026 WL 686128,

at *3 (D.D.C. Mar. 11, 2026). It is "the requester's responsibility to frame" a FOIA request "with sufficient particularity to ensure that searches are not unreasonably burdensome, and to enable the searching agency to determine precisely what records are being requested." *See SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 248 (D.D.C. 2018) (internal quotation marks omitted).

Brooks's FOIA Request does not reasonably describe the records sought. At root, he asks for "any records" "about" and "concerning" him, both within and outside the entire agency. *See* FOIA Request. Courts have repeatedly "found that FOIA requests for *all* documents concerning a requester are too broad." *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (collecting cases and concluding that a plaintiff's request for "any and all documents, including but not limited to files, that refer or relate in any way to [himself]" did not reasonably describe the records sought) (internal quotation marks omitted); *see also McKinley v. FDIC*, 807 F. Supp. 2d 1, 7 (D.D.C. 2011) (awarding summary judgment to the agency where the plaintiff, a government advisor, requested "any information available" regarding three policy decisions, because the request's "language [was] analogous to requests for records that relate 'in any way' to a person or event, which courts have repeatedly found to be overly broad and unreasonable").

Although Brooks's FOIA Request sought records in 29 categories, those categories are mostly defective and do not provide much in the way of clarification; in fact, they mostly create additional confusion. These categories are largely facially vague and burdensome: Brooks repeats requests for "any information developed, reported, shared," "related to," "maintained," or "cross-referenced," by the Army and others, about numerous far-reaching topics. *See* FOIA Request. But FOIA requests that "seek records 'pertaining to,' 'relating to,' or 'concerning' broad subject areas" are often impermissible. *See Bader Fam. Found. v. Equal Empl. Opportunity Comm'n*, No. 23-cv-976 (JMC), 2025 WL 915563, at *4 (D.D.C. Mar. 26, 2025); *Freedom Watch v. Dep't of*

*State*, 925 F. Supp. 2d 55, 61–63 (D.D.C. 2013) (same). Accordingly, courts in this jurisdiction have routinely dismissed similarly phrased FOIA requests. *See, e.g.*, *Jud. Watch, Inc. v. Dep't of State*, No. 23-cv-2964 (JMC), 2025 WL 915533, at *4 (D.D.C. Mar. 26, 2025) (finding that "the problem" with the plaintiff's FOIA request was not only that it used "the phrase 'related to,'" but also it did "not impose sufficient limitations to give the agency adequate guidance in locating responsive documents") (cleaned up).

What's more, Brooks's FOIA Request includes queries, not only broadly for "information," but also for "personnel, investigators, and support staff associated known to be coworkers, associates, supervisors (government employees and contract staff)," "usage of vehicle operations measures (transportation surveillance), "usage of confidential informants and human confidential sources," "techniques, measures, devices, and other related means used during surveillance, targeting, and analysis," and "adverse actions or measures considered." *See* FOIA Request. But, to the extent they can be understood, these are requests for names, facts, data, and statistics, not agency records, and such requests are improper. *See Jordan v. DEA*, No. 22-cv-2195 (JEB), 2023 WL 2809132, at *3 (D.D.C. Apr. 6, 2023); *see also Tokar v. Dep't of Justice*, 304 F. Supp. 3d 81, 91 (D.D.C. 2018) (finding that "requests for information rather than records are not considered proper FOIA requests") (collecting cases). With these queries, Brooks is, in essence, asking the Army to answer questions, and courts in this district have consistently held that FOIA does not "require[ ] an agency to answer questions disguised as a FOIA request." *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985); *see also Powell v. IRS*, 255 F. Supp. 3d 33, 43 (D.D.C. 2017) (explaining that FOIA does not require an agency to "provide a requestor with specific information or answer questions"); *Maydak v. Dep't of Justice*, 254 F. Supp. 2d 23, 46 (D.D.C. 2003) (finding that a request consisting of "a series of questions or requests for

information . . . [is] beyond the scope of the FOIA"); *Frank v. Dep't of Justice*, 941 F. Supp. 4, 5 (D.D.C. 1996) (holding that agencies are "not required, by FOIA or by any other statute, to dig out all the information that might exist, in whatever form or place it might be found, and to *create* a document that answers plaintiff's question").

Nor does FOIA, as proposed by portions of Brooks's FOIA Request, require an agency to "conduct research," *see Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 269 (D.D.C. 2012), or entertain a "general request for data, information and statistics," *see Krohn v. Dep't of Justice*, 628 F.2d 195, 198 (D.C. Cir. 1980). "FOIA does not provide individuals with the right to demand an all-encompassing fishing expedition[.]" *Bloeser v. Dep't. of Justice*, 811 F. Supp. 2d 316, 321 (D.D.C. 2011) (internal quotation marks omitted).

To the extent that Brooks contends that his FOIA Request is reasonably described because it includes "date ranges," *see* Pl.'s Decl. ¶ 5, the court is unpersuaded. A limited timeframe "does not necessarily cure an overly broad description of the records." *See Am. Ctr. for Law and Justice v. Dep't of Homeland Security,* 573 F. Supp. 3d 78, 84, 87–88 (D.D.C. 2021) (finding that the plaintiff's request for "any and all records, communications, or briefings" related "in any way" to eight categories involving the government's immigration enforcement actions for specific six-month period was overbroad and unduly burdensome); *Jud. Watch*, 2025 WL 915533 at *3 (same).

Brooks also argues that his Request was reasonably described because it provided the Army with "agency contexts[] and categories of records reasonably expected to exist under ordinary Army recordkeeping practices." Pl.'s Decl. ¶ 5. The court has already described the defects inherent to the "categories" and, if "agency contexts" means proposed search locations, this argument still falls short. Brooks's FOIA Request references numerous Army components where records *might* exist. On top of that, he asks the agency to search *all* of its files within any potential

other "related components," and to then additionally conduct searches of outside agencies, *see* FOIA Request, all of which is definitionally burdensome, *see Wright v. Dep't Health and Human Srvs.*, No. 22-cv-1378 (RC), 2022 WL 18024624, at *5 (D.D.C. Dec. 30, 2022) (finding that the plaintiff's claim that he limited his FOIA request "by proposing search locations [was] unpersuasive," because these "likely" locations "were just suggestions," and nothing indicated that he "agreed to narrow the search to only these locations. Quite the opposite: [the plaintiff] acknowledged that responsive records 'might be elsewhere,'" and these "suggestions, short of actual restrictions, do nothing to support the reasonableness" of the request).

By his own admission, Brooks did not narrow or clarify his Request because he feared that the Army's requests for him to do so were part of an attempt to "unlawfully withhold information" from him. *See* Compl. ¶ 8–9. As noted, the OCIO, CID, Cyber Command, and Reserve Command all reached out to Brooks multiple times to clarify or narrow the terms of the FOIA Request and obtain specific and necessary information, and he only engaged on one of those occasions and, even then, in only a perfunctory manner. *See* Pl. Jan. 29 Ltr. He cannot now complain about the agency's response.

Because Brooks points to no evidence suggesting a reason to doubt the Army's evidence and Declarations, the court finds that his FOIA Request failed to reasonably describe the records that he was seeking, therefore triggering no obligation for the Army. *See* 5 U.S.C. § 552(a)(3)(A).

**B. Reasonably Calculated Searches**

The court also finds that the Army attempted to or actually conducted searches that were reasonably calculated to retrieve responsive documents, based on its best interpretation of the FOIA Request as drafted. An agency responding to a valid FOIA request must "conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate

beyond material doubt that the search was reasonable." *Truitt*, 897 F.2d at 542 (cleaned up). The adequacy of an agency's search is measured by a standard of reasonableness under the circumstances. *Id.* "A search need not be exhaustive, and the adequacy of a search is not determined by its results, but by the method of the search itself." *Brown v. FBI*, 675 F. Supp. 2d 122, 125 (D.D.C. 2009) (internal citation omitted).

An agency may base its showing of reasonableness on declarations submitted in good faith, *see id.*, provided that the declarations explain in sufficient detail the scope and method of the search, *see Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007). Once the agency has provided a reasonably detailed affidavit, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Id.* at 1116. "In the absence of contrary evidence," an agency's reasonably detailed "declarations are sufficient to demonstrate [its] compliance[.]" *North v. Dep't of Justice*, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam)).

At the outset, the court finds that the Army's own Declarant, Marques McIntosh, a Government Information Specialist at OCIO, submitted in good faith a reasonably detailed Declaration. *See generally* McIntosh Decl. McIntosh possesses FOIA expertise, as well as insight and experience with the entirety of the Army's FOIA processes. *See id.* ¶ 1. He is thus qualified to testify as to the propriety of the Army's handling of Brooks's FOIA Request, and its respective referrals. He also personally handled Brooks's FOIA Request, evincing personal knowledge. *See generally id.*

The court also finds that the Army's components[1] have all also met their burden to provide good faith, reasonably detailed declarations supporting the sufficiency of their respective searches, or attempted searches, as explained below.

*1. Component Declarations*

a. CID

CID's declarant is Michelle Kardelis, the FOIA Chief of CID, who possesses decades of FOIA supervisory experience, *see* Kardelis Decl. ¶ 1, and personal knowledge of Brooks's FOIA Request, *see generally id*. Her declaration is therefore made in good faith.

CID conducted its first search in response to the FOIA Request on May 23, 2023. *See id.* ¶ 3. FOIA technicians searched for Brooks's name, date of birth, and social security number in the Army Law Enforcement Reporting and Tracking System database ("ALERTS"). *See id.* Kardelis explains that ALERTS "is the sole Army law enforcement report writing and tracking system" and it "provides the Army with an integrated case management system for law enforcement, supporting both the Military Police and the Criminal Investigation Command." *Id.* Although Brooks "did not reasonably describe the records he was seeking," CID "understood his request to be asking for any investigative files pertaining to him kept within CID databases. As ALERTS is the sole law enforcement report database for the Army, it is the only system that would contain any records responsive to Mr. Brooks'[s] request for records about him maintained in [the CID] office." *See id.*

Kardelis attests that, after searching ALERTS, CID retrieved one responsive document, a report of investigation ("ROI") about an incident where Brooks "reported unknown associates for

[1] The court need not address DCSA's response to the FOIA Request because Brooks only challenges the Army's "position that no responsive records exist across multiple *Army components*," *see* Pl.'s Decl. ¶ 6 (emphasis added), and DCSA is not an Army component, *see* Def.'s Mem. at 4.

conducting cyber activity against U.S. persons. The ROI was compiled in furtherance of CID's investigation of Mr. Brooks'[s] complaint to the Department of Defense (DoD) Office of Inspector General (OIG) Hotline." *See id*. at 4. On May 31, 2023, CID released the ROI to Brooks via a secure download link and sent him a letter explaining that the document was partially redacted pursuant to FOIA Exemptions 6 and 7(C). *See id.* ¶ 5; CID Dec. Ltr.

On January 28, 2025, CID again received the same FOIA Request by way of referral. *See* Kardelis Decl. ¶ 9. Per Kardelis, CID could have treated it as a duplicate request, but instead reached out to Brooks to "request clarification . . . that may have aided [their] ability to assess whether CID had any additional responsive documents." *See id*. On March 4, 2025, Kardelis emailed Brooks, seeking additional information to assist CID in searching for "email communications while [he was] employed as a contractor." *See id*. ¶ 10; CID Emails. "Because Mr. Brooks was never a CID employee, CID would not have been the originating agency for the email communications requested by Mr. Brooks. However, because the Army uses a central search application to search for emails under the Army domain, [CID] has the ability to submit a search for responsive emails, which [CID] could then refer to the originating agency for review and release" to Brooks. *See* Kardelis Decl. ¶ 10. She explained to Brooks that "to proceed on his request for e-mails and communications made while under employment involving the US Army, [CID] needed all his e-mail addresses that he had," because the Army's search system "for emails requires a specific, valid email address." *See id.* ¶ 11; CID Emails.

On April 4, 2025, Brooks declined to provide his email addresses based on his belief that CID was "fully equipped and legally obligated to conduct a thorough, good-faith search based on [his] name, official role, and known metadata," and he instructed CID to search by using "name-based queries" or "identifiers." *See* Kardelis Decl. ¶¶ 12–13; CID Emails. CID replied on May

27, 2025, informing Brooks that it still could not fulfill his records request, specifically listing approximately 27 areas where it required additional information or clarification, in addition to its outstanding need for his email addresses. *See* Kardelis Decl. ¶¶ 14–15; CID Emails. Brooks never responded. *See* Kardelis Decl. ¶ 14.

Kardelis's Declaration is sufficient to establish that CID conducted an appropriate and reasonable search. Kardelis explains the system used to conduct the search, how information is retrieved from that system, why the relevant information would be in that system, the scope and terms of the search, and the results of the search. *See generally* Kardelis Decl. She also chronicles, in detail, her repeated attempts to obtain additional information from Brooks that was necessary to conduct a second search, and his failures to provide it. *See id.* Further, CID was not obligated to follow Brooks's instructions as to the terms it should use to search for documents. *See Bigwood v. Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015); *see also Johnson v. Exec. Office for U.S. Attys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("[The] FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro manage the executive branch."). Therefore, the court finds that CID's search and additional efforts were reasonable under the circumstances.

b. <u>ISC</u>

ISC's declarant is Michael T. Heaton, Director of the Army's Investigative Records Repository and of the ISC's FOIA Office, and he is "responsible for managing the receipt, staffing, advising, and dispute resolution of all FOIA/PA requests," including Brooks's FOIA Request. *See* Heaton Decl. ¶ 1. He has worked in Army intelligence for 30 years and has served in his current role for over a decade. *See id.* ¶¶ 1–2. His Declaration is therefore submitted in good faith.

Heaton attests that, on January 10, 2025, ISC received referral of Brooks's FOIA Request. *See id.* ¶ 6. ISC informed Brooks of the results of its first search on January 16, 2025, *see id.* ¶ 7, and after Brooks provided some additional information, it again informed him that there were no responsive records on March 3, 2025, *see* ¶ 10. Both searches were conducted in a five-step inspection of ISC's "physical and digital record holdings." *Id.* ¶ 13. First, ISC conducted an automated search of Army "Intelligence databases, internal file folders, and emails located on the Non-Classified Internet Protocol Router Network (NIPRNet), Secret Internet Protocol Network (SIPRNet), and the Joint Worldwide Intelligence System (JWICS) systems." *Id.*

Second, ISC "coordinated record searches with the Army Counterintelligence Command (ACI), the Army's Command responsible for receiving, processing, investigating, and responding to select national security violations." *Id.* ¶ 14. The ACI "conducted searches on all its' database servers and share folders, both on their UNCLASSIFIED and CLASSIFIED networks. The ACI also conducted a search of the Army Counterintelligence Operations Portal (ACOP), the Army's systems of record for the day-to-day management of active Army CI investigative and operational records." *Id.*

Third, ISC "coordinated a search with the U.S. Army Intelligence and Security Records Repository (IRSS). In accordance with Army Regulation 381-45 the IRSS serves as the Army's System of Records and Records Holding Center for all completed/inactive counterintelligence and security related records." *Id.* ¶ 15.

Fourth, ISC "also conducted a search of the Defense Central Index of Investigations (DCII), an automated central index that identifies investigations conducted by Department of Defense investigative agencies, and personnel security determinations made by DoD adjudicative authorities. All security and counterintelligence records maintained by the IRSS are indexed in

DCII. Records are indexed by individual name, social number, date of birth, and record type." *Id.* ¶ 16.

Fifth, searches "were also coordinated with the INSCOM Security Vetting Office, the Army's office responsible for personnel vetting of special populations, research and technology programs, and with limited vetting of contract linguists. SVO conducted a search of their system of record, the E-Security Vetting Case Management Tool." *Id.* ¶ 17.

All five steps of both searches were conducted by use of Brooks's full name, his date of birth, and his social security number, and applied "Boolean search methodology," using various combinations of those search terms. *Id.* ¶ 18. No responsive records were found as a result of either the January 13, 2025 or the March 3, 2025 search, and Brooks was notified of same. *See id.* ¶¶ 14–18.

On March 18, 2025, ISC received a referral from DCSA that included a request for a two-page email that DCSA determined fell under ISC's authority. *See id.* ¶ 11. The two-page email "did not contain [ISC] equities and therefore would not have been identified during" the ISC's previous searches. *See id.* ¶ 11 n.1. On March 21, 2025, ISC partially released the referred email to Brooks, redacting third-party names under FOIA Exemption 6. *See id.* ¶ 12.

As the Declaration explains, the ISC searched not one, but multiple records systems that it considered most likely to contain records responsive to the FOIA Request, and it coordinated with an outside agency. *See generally id.* Heaton sets forth detailed explanations of the databases, the search terms used, and the methods of those searches. *See generally id.* Given this information, the court finds that ISC's searches were reasonable under the circumstances.

c. Cyber Command

Cyber Command's declarant is Syreeta Owens Chiles, a records administrator at Cyber Command, located at Fort Gordon, Georgia. *See* Chiles Decl. ¶ 1. She is responsible for responding to FOIA requests, *see id.*, and she also personally handled Brooks's FOIA Request, possessing personal knowledge on the topic, *see generally id.* Accordingly, her Declaration is made in good faith.

In his FOIA Request, Brooks referenced the First Information Operations Command, an Army unit that he may have worked for as a contractor. *See id.* ¶ 4. That unit "was previously stationed at Fort Belvoir, Virginia and fell under Army Cyber Command. However, it has since been deactivated and their historical records are currently held by Army Cyber Command at Fort Gordon, Georgia." *Id.* Accordingly, on January 10, 2025, Cyber Command received the referral of Brooks's FOIA Request. *See id.*

Upon review, on May 14, 2025, Chiles emailed Brooks, "requesting clarification of his FOIA request to enable [Cyber Command] to conduct a search for responsive records." *Id.* ¶ 5; CC Emails I. She explained to Brooks that, "to proceed on his request, specifically for e-mails and communications made while under employment involving the US Army," Cyber Command required "the e-mail addresses he used during that timeframe." *Id.* Chiles also asked Brooks to clarify his requests for (1) "work products" created during his period of employment, *id.* ¶ 6, and (2) "information developed" by the Army involving him, so that Cyber Command could conduct a search for any responsive documents, *id.* ¶ 7; CC Emails I. Finally, she informed Brooks "that any clearance documents would be in the possession of his employer, but requested the name of any document he might be looking for," so that Cyber Command could nonetheless attempt a

search for anything responsive. *See id.* ¶ 8; CC Emails I. Brooks did not respond. *See* Chiles Decl. ¶ 9.

On May 27, 2025, Chiles sent Brooks a follow-up email, advising him that Cyber Command could not respond to his FOIA request without the clarifying information originally sought, and asking for additional clarifying information relating to 29 other topics within his Request. *See id.* ¶ 10. He never responded to that email either. *See id.* ¶ 11.

Based on this information, the court finds Cyber Command's efforts and response to be sufficient based on the circumstances. An agency "is not required to divine a requester's intent." *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003) (citing *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996)). After Cyber Command concluded that Brooks's FOIA Request was not reasonably described, it was obligated to inform him what additional information was needed and/or why the request was otherwise insufficient. *See* 32 CFR § 286.5(a). Cyber Command exceeded these obligations by attempting to clarify Brooks's FOIA Request on not just one, but two occasions, but he failed to respond. *See, e.g.*, *Legal Eagle, LLC v. Dep't of Just.*, No. 24-cv-3316 (CRC), 2026 WL 35261, at *6 (D.D.C. Jan. 6, 2026) (finding no merit in the plaintiff's arguments where the agency offered it "the chance to appeal the agency's determination that its request was not reasonably described; alternatively, the agency invited the plaintiff to reframe its request to seek a specific topic of interest," but instead, "apparently unhappy with the two options [the agency] offered," the plaintiff improperly "brought its grievance" to federal court) (cleaned up); *Risenhoover v. U.S. Dep't of State*, No. 21-cv-2563 (BAH), 2023 WL 2043218, at *4 (D.D.C. Feb. 16, 2023) (finding that the defendants' "efforts to confer with plaintiff to understand better what records were sought within the sprawling four corners of the request, but without success[,]" evidenced "multiple good faith efforts to have plaintiff clarify or narrow his

request," and "evince[d] no improper withholding under FOIA.") (internal quotation marks omitted).

d. Inspector General

The Inspector General's declarant is Ashley Ingram, a Paralegal Specialist with the Inspector General, who was personally responsible for processing Brooks's FOIA Request and she bears experience and personal knowledge of her office's FOIA processes and procedures. *See generally* Ingram Decl. Her declaration is thus submitted in good faith.

In mid-January 2025, the Inspector General "conducted a worldwide search of the [Inspector General Action Request System (IGARS)] database," which is "indexed and organized primarily by Personally Identifiable Information (PII), specifically the names of "Complainants" (those who file a request) and "Subjects" (those against whom allegations are made)." *Id.* ¶¶ 4–5. Accordingly, Ingram conducted a "worldwide search of the IGARS database using the search terms 'Brooks' and 'Antonio.'" *Id.* ¶ 5. The search was tailored to retrieve responsive records based on the nature of the FOIA Request (i.e., Brooks was seeking records "about" himself), and it "was designed to capture every instance in the Army Inspector General system where Mr. Brooks was listed as either a Complainant or a Subject. This search methodology [was] consistent with standard Department of the Army Inspector General procedures and represent[ed] the only reliable means of identifying all records pertaining to Mr. Brooks." *Id.* This search yielded seven responsive documents, which were redacted and produced to Brooks on February 6, 2026. *See* Ingram Decl. ¶ 6.

The court finds that the Inspector General has sufficiently shown that its search was adequate. Ingram provided details regarding the search methodology, locations, and terms, all of

which were faithful to the FOIA Request's scope as best understood and reasonably calculated to retrieve responsive records under the circumstances.

e. Reserve Command

The Reserve Command's declarant is Kimberly Pettaway, a Reserve Command FOIA Officer, with expertise and responsibility in processing FOIA requests, and who personally handled Brooks's FOIA Request. *See generally* Pettaway Decl. Her Declaration is made in good faith.

On February 5, 2025, Reserve Command received the referral of Brooks's FOIA Request. *See id*. ¶ 2. On February 6, 2025, Pettaway searched "by reviewing the systems of records used to store personnel records," including "the Interactive Personnel Electronic Records Management System (iPERMS) and the Soldier Management Services – WEB Portal (SMS WEB)." *Id.* ¶ 3. Pettaway attests that those are the "only systems of records" within Reserve Command that were "likely to contain responsive documents because the Army Reserve Command does not utilize any other systems of records to store or maintain personnel records similar to those being sought by Mr. Brooks." *Id.*

Pettaway searched using Brooks's full name and social security number. *See id.* ¶ 4. No responsive records were located. *See id*. Pettaway then contacted Reserve Command's "Office of the Staff Judge Advocate to confirm that no records of adverse actions or investigations were on file with their office." *See id.* ¶ 5. On February 13, 2025, Reserve Command notified Brooks that it found no responsive records pursuant to its searches. *See id*. ¶ 6.

Then, on September 11, 2025, Reserve Command sent a follow-up email to Brooks, inquiring whether he had ever been a contractor for Reserve Command, and if so, requesting he

"provide the timeframe and command where he was employed" and the email address he had at the time, but Brooks never replied, *id.* ¶¶ 7–8.

In light of these details, the Reserve Command's searches were adequate and reasonable. Given the scope of the FOIA Request, which focused on records "about" Brooks, it was reasonable for Pettaway to search using his name and social security number. She further searched the only two record systems available, and yet more, reached out personally to Office of the Staff Judge Advocate to confirm that no records existed anywhere else. These efforts satisfied Reserve Command's search obligations.

*2. Countervailing Evidence*

With the components having met their "burden of showing that [they] complied with the FOIA," the burden shifts to Brooks to "provide countervailing evidence as to the adequacy of the agency's search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (internal quotation marks omitted). Brooks has not offered any such evidence.

Brooks does not challenge any of the Declarations or their respective declarants. Instead, he asserts that the Army "repeatedly referred [his] [R]equest to multiple components and other agencies, yet simultaneously argues the request was too indeterminate to search and that its searches were complete." *See* Pl.'s Opp'n at 3. In his view, "[t]hese positions cannot be reconciled without further explanation." *Id.* But there is nothing inconsistent with the Army's position. The Army and its components requested clarification from Brooks that they never received, notifying him repeatedly that they might be able to conduct a more fruitful search if he assisted them—but he declined to engage. *See Cntr. for Immigr. Studies*, 628 F. Supp. 3d 266, 274 (noting that the plaintiff "could have avoided [the] outcome" of litigation and summary judgment for the agency, and likely received responsive records, if it had just modified the language of its FOIA request).

Nonetheless, nearly all of the Army's components made efforts to search as best they could, making do with the information as presented. *See Heritage Found. v. Dep't of Just.*, No. 24-cv-200 (RBW), 2026 WL 1847082, at *7 (D.D.C. June 26, 2026) (finding that where the agency, "[d]espite not being able to determine what records the plaintiffs sought, but in the spirit of cooperation, . . . decided to offer the request its most reasonable interpretation," and conducted a search, it fully complied with its FOIA obligations). Put differently, the Army's "failed attempt[s] to clarify" the FOIA Request did not mean that it was prohibited from endeavoring to conduct searches, and its reliance on a vagueness defense "[did] not waive" its ability to rely on other defenses, including the adequacy of its searches. *See Cato*, 2023 WL 3231445, at *6–7; *Leopold v. Immigr. & Cust. Enforcem.*, 560 F. Supp. 3d 189, 200–01 (D.D.C. 2021) (same).

Brooks also insists that additional responsive records exist and the Army's "position that no responsive records exist across multiple Army components is inconsistent with [his] lived employment history and personal knowledge." *See* Pl.'s Decl. ¶¶ 3–4, 6; Pl's Opp'n at 2–3. First, Brooks's claim that potential documents exist is speculative, even though he justifies it based on his prior professional connection to the Army. *See, e.g.*, *Malik v. Dep't of Homeland Security*, No. 22-cv-698 (CRC), 2025 WL 763642, at *5–6, *10, *12–13 (D.D.C. Mar. 11, 2025) (awarding summary judgment for the agency and rejecting the plaintiff's arguments as speculation where he repeatedly insisted that specific additional documents existed and were not produced based on his personal knowledge as a former agency employee and because other documents were produced in discovery in previous litigation).

Second, whether other responsive documents exist or not is irrelevant. Brooks's focus is improperly directed, not at search methods, but at search results. The "adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods

used to carry out the search." *Iturralde*, 315 F.3d at 315. "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). Brooks does not challenge any of the components' search methods or other efforts and responses. And without more than his personal supposition, his contention that additional documents likely exist "does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)

Because Brooks has not presented any evidence to question the Army's Declarations, which are accorded a presumption of good faith, and upon review of those good faith Declarations and the other evidence submitted by the Army, the court finds that (1) the agency's searches were reasonably calculated to uncover responsive records and (2) where it determined not to conduct a search, the agency was justified because Brooks's FOIA Request was not reasonably described.

## IV. CONCLUSION

For the reasons explained above, the court grants Defendant's Motion for Summary Judgment, ECF No. 34. A final, appealable order accompanies this Memorandum Opinion.

Dated: September 30, 2026

Amit P. Mehta
United States District Judge